IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARCUS T. DIXON, | ) |
|       Plaintiff, | ) |
| vs. | ) Case No. 19-cv-222-SMY |
| JACQUELINE LASHBROOK, KIMBERLY BUTLER, JOHN TROST, HALEY DAVIS, GAIL WALLS, MOHAMMED SIDDIQUI, TONYA SMITH, SHANE QUANDT, JASON MIGNERON, SUZANNE ALT, CHRISTINE SMITH, ANGELA CRAIN, AND WEXFORD HEALTH SOURCES, | ) |
|       Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge**

This case is before the Court on the Report and Recommendation ("Report") of United States Magistrate Judge Gilbert C. Sison (Doc. 123), recommending that Defendants'[1] Motions for Summary Judgement (Docs. 64, 74) be granted. Plaintiff filed an objection (Doc. 124). For the following reasons, Judge Sison's Report is **ADOPTED in part and MODIFIED in part**.

### Background

Plaintiff Marcus Dixon, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights were violated while he was incarcerated at Menard Correctional Center and Western Illinois

---

[1] Defendants Dr. John Trost, Dr. Mohammed Siddiqui, Dr. Suzanne Alt, Hayley Davis, and Christina Smith filed the Motion for Summary Judge at Document 64. Defendants Kimberly Butler, Jacqueline Lashbrook, Gail Walls, Angela Crain, Sgt. Jason Migeron, Officer Shane Quandt, and Tonya Smith filed the Motion for Summary Judgment at Document 74. Defendant Wexford Health Sources filed a separate Motion to Dismiss at Document 115. The Court refers to them all collectively as Defendants.

Correctional Center. He asserts an Eighth Amendment deliberate indifference claim against Defendants for denying or delaying his post-operative care following neurosurgery.

Defendants are various physicians, medical staff, and administrators employed by the Illinois Department of Corrections ("IDOC") and its medical services contractor, Wexford Health Sources, Inc. ("Wexford").[2] All defendants except for Wexford moved for summary judgment, contending Plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit (Docs. 64, 74).

## Factual and Procedural Background

On January 28, 2016, Dixon was admitted to St. Louis University (SLU) hospital for removal of a tumor on his head (Doc. 97 at 10). He was released back to Menard ten days later with a directive for post-operative placement and care in Menard's health care unit. *Id.* Despite this directive, on March 4, 2016, Nurse Tonya Smith, Officer Quandt, and Sergeant Migneron transferred Dixon to segregation based on a disciplinary action taken prior to surgery. *Id.*

Dixon subsequently fainted, hit his head, and sustained further injuries (Doc. 73 at 13-14).[3] He was denied closer observation and treatment after his injuries (Doc. 97 at 10). He regularly reported dizziness, headaches, stomach pain, and blackouts from May 2016 to June 2017. He complained directly to several defendants for medical access, including attending his follow-up appointments with his SLU doctors, but his requests were continually denied. *Id.*

Dixon filed numerous grievances from August 2016 through 2020 complaining of the lack of medical care. In February 2017, he was transferred to Western Illinois Correctional Center

---

[2] Dixon's original Complaint included Wexford as a defendant, but his First Amended Compliant neglected to name Wexford as a party or make specific allegations against it (Docs. 1, 17). Dixon later filed a Second Amended Complaint that contains the same allegations as his First Amended Complaint, but merely adds Wexford as a defendant (Doc. 97). The Motions for Summary Judgment are considered filed in response to the Second Amended Complaint, which were filed before Wexford's addition.
[3] Dixon hit his head on the bunk beds and cell sink on other occasions (Doc. 73 at 15; Doc. 97 at 10).

(Doc. 73 at 20). Dr. Alt and Nurse Christine Smith prescribed him excessive amounts of Ibuprofen, Naproxen, and Mobic (Doc. 97 at 11). When he was finally allowed to attend a follow-up appointment on August 8, 2017, Dixon collapsed in the doctor's office and was admitted to the hospital for treatment of internal bleeding. *Id.*

Judge Sison held an evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) and examined Dixon's grievances spanning August 17, 2016 to January 29, 2020. During the hearing, Dixon testified that he was incapacitated after his surgery and could not submit grievances from March 2016 to July 2016 (Doc. 123 at 7). However, he admitted to filing an appeal with the Administrative Review Board ("ARB") in April 2016 regarding an unrelated grievance on a disciplinary issue. *Id.*

Judge Sison found that the relevant period for Dixon's deliberate indifference claim is March 4, 2016 (when Dixon was moved to segregation after his surgery) to August 8, 2017 (when he received a follow-up appointment, collapsed, and was admitted to the hospital) and concluded that the grievances dated 2018 to 2020 postdate the August 2017 hospitalization by more than 60 days and were therefore untimely. *Id.* at 3-4. Judge Sison also found that an August 17, 2016 grievance was dated 60 days after Dixon's allegedly improper transfer to segregation and was also untimely. *Id.* at 13. Additionally, he concluded that the August 2016 and October 14, 2016 grievances were too vague to exhaust Dixon's claims regarding a denial of follow-up care because he failed to name the defendants or offer any description of them. *Id.* Lastly, Judge Sison concluded that Dixon failed to properly file a July 11, 2017 grievance. *Id.* at 14.

## Discussion

Where timely objections are filed, this Court must undertake a *de novo* review of the Report and Recommendation. 28 U.S.C. 636(b)(1)(B), (C); FED. R. CIV. P. 72(b); SDIL-LR 73.1(b); *see*

*also Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). The Court may accept, reject, or modify the magistrate judge's recommended decision. *Id.* In making this determination, the Court reviews the evidence contained in the record and gives fresh consideration to those issues to which specific objections have been made. *Id.*, *quoting* 12 Charles Alan Wright et al., *Federal Practice and Procedure* 3076.8, at p. 55 (1st Ed. 1973) (1992 Pocket Part).

Pursuant to the Prison Litigation Reform Act, prisoners must exhaust all available administrative remedies before filing suit. 42 U.S.C. § 1997e(a). Proper exhaustion requires that inmates file complaints and appeals in the place, at the time, and in the manner the prison's administrative rules require. *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002). Applicable regulations require that normal grievances must be submitted "within 60 days after the discovery of the incident, occurrence or problem that give rise to the grievance." 20 ILL. ADMIN. CODE § 504.810(a).

Dixon argues Judge Sison erred in finding that he did not fully exhaust his administrative remedies. Specifically, he maintains that his delayed filings were excusable because the objectionable conditions were continuing, and special circumstances (his incapacitation) justified his failure to exhaust. While Dixon claimed he was incapacitated for approximately five months, he acknowledged that he had access to the grievance process during this period and that Defendants did not prevent him from filing a grievance. And other than Dixon's testimony, the record lacks evidence that his incapacitation made the grievance process unavailable to him. Notably, Judge Sison found that Dixon's testimony in that regard lacked credibility. Judge Sison's skepticism (as well as the undersigned's) was due in part to the fact that Dixon was somehow able to file an appeal to the ARB in April 2016 – during the time he claims he was incapacitated. An inmate forfeits the grievance process when he causes the unavailability of a remedy by not timely filing

or appealing a grievance. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Because he could have availed himself of the grievance process, Dixon fails to establish special circumstances that would excuse his untimely filings.

Dixon also argues that he regularly complained of health problems such as dizziness, headaches, stomach pain, and blackouts from May 2016 to June 2017 and that his claimed injuries in this case are the consequence of a continuous series of events. In other words, he contends that because he did not receive the required care until August 2017, prison staffs' refusal of medical care supports a claim for a continuing violation of his Eighth Amendment rights, and as such, the grievances he filed prior to August 2017 should be considered timely. The Court agrees.

A violation is continuing where "it would be unreasonable to require or even permit [a prisoner] to sue separately over every incident of the defendant's unlawful conduct." *Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir. 2001). Therefore, the clock starts to run from the date of the last incidence of the violation, not the first. *Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013). Here, Dixon's claims concern alleged continuing inaction of prison staff who repeatedly denied him medical access to his offsite doctors, and with each continuing day his injuries increased. The clock began running on August 7, 2017, the last day before he finally received his requested follow-up care. Accordingly, Dixon's grievances filed between March 4, 2016 (the date he was removed from the Menard health care unit and first denied medical access) and October 6, 2017 (60 days after he received a follow-up appointment in August 2017) are timely as to the claims asserted in this lawsuit.

### August 17, 2016 Grievance

Dixon filed a grievance on August 17, 2016 stating:

> I the grievant Marcus T Dixon #B-66674 as the above date have not been escorted from Menard C.C. to St. Louis University Medical Doctors. I have informed

> medical staff at Menard C.C. that my follow up appointments have been schedule by the specialist. Do to not following up has caused me more injuries because of these delays. I'm in more pain (Doc. 65-1 at 8).

He also requested "to be sent out to the follow ups with these specialists in St. Louis (SLU)." *Id.* Because this grievance concerns the claims raised in this lawsuit and was filed during the relevant continuing violation period, it is timely.

Further, Dixon never received a response from his Counselor or a Grievance Officer, and in July 2018, sent the grievance to the ARB requesting a response. The ARB returned the grievance, stating that it had not been reviewed at the facility level. There is a "received" stamp from the ARB dated July 27, 2018, but no counselor, grievance officer, or CAO response is noted on the grievance form. An inmate is required to exhaust only those administrative remedies that are available to him. *See* 42 U.S.C. § 1997(e). Administrative remedies are "unavailable" when prison officials fail to respond to a properly filed inmate grievance. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002).

Dixon never received a written response from the facility level, causing him to appeal to the ARB. Thus, prison officials' failure to respond to Dixon's grievance rendered his administrative remedies "unavailable". But the Court's inquiry doesn't end there – it must determine whether the content of the grievance was sufficient to cover the claims in this lawsuit against Defendants.

The August 17, 2016 grievance states that "medical staff at Menard C.C." were informed that Dixon had follow-up appointments at SLU. But Dixon neglected to name or identify specific personnel at Menard beyond "medical staff at Menard C.C." If an inmate does not know the names of individuals, he "must include as much descriptive information about the individual as possible." 20 Ill. Admin. Code § 504.810(c). Dixon did not satisfy this requirement. He also failed to describe which medical staff denied or delayed his follow-up appointments. In sum, his reference

to "medical staff" is too ambiguous a description to provide sufficient notice for prison staff to address the issue or implicate them in the alleged wrongdoing; and arguably implicates every medical employee at Menard. *See*, *Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014) (explaining "fatal defect" in grievance was "the absence of anything in it to indicate that [the defendant] was the target."). Accordingly, Dixon's August 2016 grievance fails to exhaust his administrative remedies.

### October 14, 2016 Grievance

Dixon's October 14, 2016 grievance also complains of being removed from the Menard health care unit on March 4, 2016. However, there is no mention of him missing his follow-up doctor's appointments or any requests to see his offsite doctors. His requested relief includes transferring him to a different housing unit and compensating him for the time in punitive segregation. Because the grieved occurrence took place on March 4, 2016, his October 2016 grievance is untimely. Dixon argues that because he filed this grievance within 60 days of having a disciplinary action – one which caused his transfer to segregation – to be expunged, this grievance should be deemed timely. Even so, the grievance would not put prison officials on notice of this lawsuit's claims because it never discusses the continuing violation of delayed medical treatment. Accordingly, the October 2016 grievance is untimely and fails to exhaust Dixon's administrative remedies.

### Other Grievances

Dixon's other grievances are either untimely or were improperly submitted. Specifically, he filed an emergency grievance on July 11, 2017 requesting to see his offsite doctors. While this grievance appears timely, the Chief Administrative Officer concluded that the grievance did not present an emergency and instructed Dixon to file the grievance in the normal course. Instead,

Dixon sent the grievance directly to the ARB who denied his request. As such, he failed to comply with § 504.840(c), and consequently, failed to exhaust his administrative remedies.

The grievances filed between 2018 and 2020 are outside the 60-day window following his August 2017 doctor's appointment and are therefore also untimely. The grievances filed in 2018 also related to appointments outside the scope of this lawsuit.

## Conclusion

For the foregoing reasons, Judge Sison's Report and Recommendation is **ADOPTED in part and MODIFIED in part**. The Court rejects Judge Sison's finding that Dixon's August 14, 2016 and July 11, 2017 grievances were untimely – the claim involves a continuing violation of Dixon's rights. Nevertheless, Dixon failed to exhaust his administrative remedies. Therefore, Defendants' Motions for Summary Judgement for Failure to Exhaust Administrative Remedies (Docs. 64, 74) are **GRANTED**.

Because the record lacks any other filings or grievances, Dixon also failed to exhaust his administrative remedies as to Wexford Health Sources (added as a defendant after the motions were filed). Therefore, for the reasons detailed above, the Court **GRANTS** summary judgment in favor of Wexford Health Sources. Fed. R. Civ. P. 56(f). Wexford Health Sources' Motion to Dismiss for Failure to State a Claim (Doc. 115) is **TERMINATED as moot**. This matter is **DISMISSED without prejudice** and the Clerk of Court is **DIRECTED** to enter judgment accordingly and close the case.

**IT IS SO ORDERED.**

**DATED: September 22, 2021**

2021.09.22
14:42:13 -05'00'

**STACI M. YANDLE**
**United States District Judge**